IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JALAL MANSI, BILAL HIJAZ and JAMAL MANSI d/b/a OLIVE CAFE and OLIVE CAFE, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 11-0903-CV-W-ODS |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) | |

<u>ORDER AND OPINION SETTING FORTH
FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF JUDGMENT FOR DEFENDANT</u>

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, and based on all files, records, memoranda, and arguments of counsel for all parties, both orally and in writing, the Court makes the following findings of fact and conclusions of law. Judgment is entered in Defendant's favor.

I. FINDINGS OF FACT

The United States Department of Agriculture's Food and Nutrition Service ("FNS") operates the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the food stamp program. SNAP utilizes an Electronic Benefit Transfer ("EBT") system, and SNAP recipients obtain their benefits through an EBT card. SNAP benefits may be redeemed only in exchange for eligible food items from retail food stores that have been approved to participate in SNAP. Authorized stores have an EBT machine that allows eligible purchases to be processed with an EBT card.

Olive Café was approved by FNS to participate in the SNAP program as a food retailer. Rashid Khalaf, a former manager at Olive Café, conducted most of the transactions between August 2010 and December 2010 until he stopped working at the

store sometime in December 2010. Olive Café owners Jamal Mansi or Bilal Hijaz conducted all transactions in January 2011. Between August 2010 and January 2011, Olive Café made more than $95,000 in sales through the SNAP program.

On November 16, 2010, Donna Donovan, an investigator with FNS, made a store visit to Olive Café. Her report noted that Olive Café had one cash register, one adding machine, one EBT terminal, and no optical scanning device. The report also noted that grocery items were priced ending in a cents value of $0.99.

On May 23, 2011, FNS sent Plaintiffs a letter ("May 23, 2011 Letter") informing them of 267 suspicious transactions that were indicative of SNAP benefit trafficking between August 2010 and January 2011. Trafficking includes buying unapproved products with SNAP benefits and trading benefits for cash. The flagged transactions included 21 transactions in August 2010 ending in $0.00. One of these transactions was for $50.00. FNS also found 6 sets of transactions made in a rapid succession of time too short to be credible and 100 sets of back-to-back transactions made from the same SNAP account in a short period of time. For example, on January 22, 2011, after a transaction for $28.52, 2 minutes and 52 seconds later a second transaction was made by a different household for $362.71. Another suspicious transaction occurred on Olive Café on January 6, 2011. After a transaction for $235.18, 2 minutes and 45 seconds later a second transaction was made by the same household for $118.98. On September 4, 2010, a $240.89 transaction occurred at a superstore 21 miles from Olive Café. Twenty-five minutes later, a transaction at Olive Café totaling $333.00 was processed for the same SNAP household. Finally, FNS found 140 transactions exceeding the average transaction for stores of the same size/type by 300%. One of these instances occurred in the months of October through December 2010 when one household made single monthly transactions at Olive Café of $748.78, $681.46 and $592.37, respectively, while it made multiple smaller purchases throughout the month at Price Chopper, located less than a mile from Olive Café.

FNS received no response to the May 23, 2011 Letter. On June 8, 2011, FNS issued a final determination letter to Olive Café, permanently disqualifying it from participating as a SNAP retailer. Olive Café requested an appeal, but failed to provide

2

any documentation in support of the appeal. On August 11, 2011, the administrative review officer issued a Final Agency Decision and Olive Café was permanently disqualified from participating as a SNAP retailer.

## II. CONCLUSIONS OF LAW

SNAP benefits may only be used to purchase food from stores that have been approved to participate in the program. 7 U.S.C. § 2013(a); 7 C.F.R. § 278.2(a). Trafficking is "the buying or selling of coupons, ATPS cards or other benefit instruments for cash or consideration other than eligible food." 7 U.S.C. § 271.2. A store that makes a trafficking violation is permanently disqualified from participating in the program. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i). Permanent disqualification occurs even for a single instance of a violation. 7 U.S.C. § 2021(b)(3)(B). However, a civil monetary penalty may be imposed in lieu of permanent disqualification for trafficking if there is substantial evidence that (1) the store had an effective policy and program in effect to prevent violations and (2) the ownership of the store was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 3.91.

A store that is permanently disqualified from participating in SNAP may bring an action for judicial review by filing a complaint against the United States in federal district court. 7 U.S.C. § 2023(a)(13). Issues of fact are tried de novo in the district court. *Sims v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 860 F.2d 858, 862-63 (8th Cir. 1988). Plaintiffs bear the burden of proving that the store was improperly disqualified either because there were no violations or because they are entitled to be sanctioned with a civil monetary penalty in lieu of permanent disqualification. *See Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010). If Plaintiffs meet this burden, the penalty imposed by FNS may be set aside only if it is shown to be arbitrary and capricious. *Estremera v. United States*, 442 F.3d 580, 585 (7th Cir. 2006).

## III. DISCUSSION

In this case, Plaintiffs seek judicial review of FNS's Final Agency Decision permanently disqualifying Olive Café from participating in the SNAP program. FNS identified four categories of suspicious SNAP transactions at Olive Café between August 2010 and January 2011. These include: (1) 21 transactions in August 1010 that ended in $0.00; (2) 6 sets of transactions that were made in a rapid succession in time frames too short to be credible; (3) 100 sets of back-to-back transactions made from the same SNAP account in a period of time too short to likely be credible; and (4) 140 transactions that exceeded the average transaction for stores of the same size/type by 300%. The Court finds that there was at least one or more instance of trafficking.[1] Although not required to justify permanent disqualification, the Court finds a trafficking violation occurred in each category outlined by FNS.

First, the Court finds that one instance of trafficking occurred in August 2010 totaling $50.00. The evidence shows that Olive Café grocery items were priced ending in a cents value of $0.99. It is very unlikely that a transaction would end in $0.00 with a pricing structure ending in $0.99. In addition, a store visit report noted that Olive Café did not round off purchase totals. Whether or not this notation was accurate, if Olive Café was rounding totals as a general business practice, there would have been consistent flags in the system of this occurring every month and not just the 21 times in August 2010 alone.

Next, the Court finds that several "rapid succession in time" transactions and "back-to-back" transactions were trafficking, including two in January 2011. On January 6, 2011, a household made a transaction at Olive Café for $235.18. Two minutes and 45 seconds later the same household made a second purchase for $118.98. Also, on January 22, 2011, a transaction was completed for $28.52. Two minutes and 52 seconds later a different household completed a transaction totaling $362.71. These

---

[1] Although the Court does not discuss each instance of trafficking, the Court does not find that they did not occur. There is simply no need to discuss each and every violation once the Court finds that at least one violation occurred.

4

transactions were made too close in time to be credible. The number of grocery items in these purchases would require more time for the first transaction to be completed, bagged up, and moved out of the way and for the second transaction's price to get calculated—especially when there was only one cash register, one adding machine, one EBT machine, limited space for check-out, and no conveyor belt or optical scanning device.

The Court finds that trafficking also occurred on September 4, 2010, when a $240.89 transaction was made at a superstore 21 miles from Olive Café, and only 25 minutes later, a transaction at Olive Café totaling $333.00 was processed for the same SNAP household. These back-to-back transactions made by the same SNAP household occurred too close in time to be credible. There was not enough time for the customer to leave the superstore, load the groceries in the car, drive 21 miles to Olive Café, select more than $300 worth of groceries, and have the items totaled up and the transaction completed all in 25 minutes. Olive Café had limited space to check-out items, no optical scanning devices, and only one cash register. Plaintiffs testified that they believed this type of transaction occurred because sometimes a customer would phone-in an order. However, Plaintiffs have failed to present any documentary evidence, such as orders taken in advance by phone, to show that the transaction in question was only for SNAP eligible food items and totaled amounts deducted from SNAP EBT accounts.

Finally, the Court finds trafficking occurred with one EBT household in the months of October through December 2010. This household made single monthly transactions at Olive Café of $748.78, $681.46 and $592.37 while making multiple smaller purchases throughout the month at Price Chopper, which was located less than a mile from Olive Café. The most expensive SNAP eligible food items at Olive Café included whole lamb and goat for $130-$140 each, canned milk for $27.99, cooking oil for $24.99, and 10 pounds of rice for $17.99. Even if this household purchased a whole goat as well as one of each of the more expensive items in the store, the purchase total would not even be near the price of its transactions.

Critically, Plaintiffs did not carry their burden to give an innocent explanation for

5

Case 4:11-cv-00903-ODS   Document 72   Filed 03/22/13   Page 5 of 7

each violation.   Plaintiffs provided various explanations about how the flagged transactions could have been legitimate.   Rashid Khalaf, a former manager at Olive Café, and Jamal Mansi, an owner of Olive Café, testified that they frequently gave customers discounts by rounding down a purchase total, but never gave SNAP customers cash back because it was against their religion.   They also testified it was not unusual to have transactions close in time because sometimes customers would call in orders and the groceries would be bagged up and the price calculated ahead of time. Then, as soon as the customer arrived, the purchase would be rung up and the only thing the customer had to do was swipe his or her EBT card.   Khalaf and Mansi said that sometimes customers would have two carts and transactions would be rung up separately and that it was not unusual for customers to come in once a month and make big purchases.   Plaintiffs also presented testimony of a few Olive Café customers who testified they often made large purchases, would sometimes call in an order ahead of time, and never asked for nor received cash back because it was wrong or against their faith.   They testified that sometimes they received a discount where their purchase total was rounded down

It is possible that some of the 267 suspicious transactions were legitimate. However, Plaintiff's generalizations about customer shopping habits, Olive Café's business practices, and certain religious customs are not helpful to Plaintiff's cause because they cannot point to specific transactions that were legitimate.   A plaintiff must demonstrate that each violation was not trafficking; general allegations will not suffice. *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000).

Because the Court has concluded that at least one instance of trafficking occurred, it must now determine whether Olive Café is entitled to the lesser punishment of a civil monetary penalty.   In this case, Plaintiffs failed to show they are entitled to be sanctioned with a civil monetary penalty in lieu of permanent disqualification for three independent reasons.   First, the Court finds no evidence that Olive Café had an effective policy and program in effect to prevent violations.   To the contrary, Jamal Mansi, one of the owners, testified that he did not know that he could conduct an EBT balance inquiry and instead required customers to make a purchase in order to check their balance.   The Court finds

6

there is no way to have an effective program in place to prevent SNAP violations when the store owners did not fully understand the program and EBT system. Second, the Court finds that the Olive Café owners participated in the trafficking. At least two of the trafficking violations the Court found occurred in January 2011 and were conducted by either Jamal Mansi or Bilal Hijaz, owners of Olive Café. Third, all the owners benefited in the trafficking by redeeming the SNAP transaction benefits, totaling more than $95,000 between August 2010 and January 2011. Accordingly, a civil penalty in lieu of permanent disqualification is not an option.

## III. ORDER

It is hereby Ordered that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

DATE: March 22, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT